UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JESSE M. CUNNINGHAM, III,

                        Plaintiff,

        v.                                          Case No. 23-cv-291-pp

KENOSHA COUNTY,
KENOSHA COUNTY PROSECUTOR'S OFFICE,
KENOSHA COUNTY POLICE DEPARTMENT,
OFFICER ROWLEY, OFFICER SINGH,
OFFICER VEGA and OFFICER AQUINO,

                        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING
COMPLAINT UNDER 28 U.S.C. §1915A**

Jesse M. Cunningham, III, who is incarcerated at Prairie du Chien

Correctional Institution and is representing himself, filed a complaint under 42

U.S.C. §1983, alleging that the defendants unlawfully entered his home,

searched and arrested him and detained him pending trial. This decision

resolves the plaintiff's motion for leave to proceed without prepaying the filing

fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

## I.      Motion for Leave to Proceed without Prepaying the Filing Fee
          (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the

plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).

The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On March 10, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $26.74. Dkt. No. 7. The court received that fee on March 20, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint names as defendants Kenosha County, the Kenosha County Prosecutor's Office, the Kenosha County Police Department and Kenosha County Police Officers Singh, Vega, Rowley and Aquino. Dkt. No. 1 at 1–2. The plaintiff alleges that on or around February 6, 2021, Officers Singh, Rowley, Vega and Aquino illegally entered the home he shared with his daughter without their consent. Id. at 3. He says he and his daughter were

3

"awaken [*sic*] by police terror and screams of his daughter by police invasion."
Id. His daughter told the officers that the plaintiff "didn't do anything wrong
and Melissa Rickey don't live here!" Id. The plaintiff says he told the officers to
leave numerous times because Melissa Rickey no longer lived there, and that
she was asked to leave that morning after an argument the previous evening.
Id. at 4. The plaintiff says the officers searched his home and his person
beyond "the area from within [which] he might [have] obtained either a weapon
or something that could have been used as evidence against him." Id. He
asserts that there "was [no] constitutional [j]ustification[,] in the absence of a
search warrant, for extending the search beyond that area." Id.

The plaintiff explains that he and his daughter lived at the home for
several years. Id. at 5. He says his girlfriend was supposed to come over the
following morning, and that he wanted Ms. Rickey "to leave his home because
of her behavior." Id. He says that while he was asleep, Ms. Rickey "called the
police falsely, which the District Attorney drop all her false allegations." Id. The
plaintiff says Ms. Rickey has "untreated mental health diagnoses [*sic*]," and
there had been several law enforcement and police contacts regarding her
mental health; he says her behavior was indicative of "extreme paranoia and
hallucinations." Id. The plaintiff says the officers told him "that they knew of
Ms. Rickey." Id. at 6. The plaintiff asserts that the officers "blatantly
disregarded protocol, because he is an African American male living in Kenosha
County." Id. He claims the officers "took advantage of Ms. Rickey['s] mental
health issues so they [could] violate [his] constitutional and civil rights." Id. He

4

says that the officers terrorized him, separated him from his daughter, wrongfully detained and imprisoned him, all of which caused him to lose his home, his property, his children and his freedom. Id.

The plaintiff asserts that the officers arrested him without first reciting the Miranda warnings. Id. at 8. He says he was then held without bail and without being provided a "court proceeding with out any formal charges for six months." Id. He says that while he was detained, he asked "the Courts for any evidence or discovery which he was also denied." Id. at 9. He says, "Brady violation," which he says "force[d] the Plaintiff to except [sic] a plea offer." Id. The plaintiff says that when he realized that a "vindictive, malicious prosecution [was] being set forth," he wanted to withdraw "his plea offer," but the court denied that request. Id. The docket from the plaintiff's state court criminal case shows that he pleaded guilty on February 21, 2022, to one charge of unlawful possession of a firearm. See State of Wisconsin v. Jesse M. Cunningham III, Kenosha County Case Number 2021CF000925 (available at https://wcca.wicourts.gov/case.html). The court dismissed a second count of possession of THC. Id.

The plaintiff asserts that the officers violated his rights under the Fourth Amendment and "Sec II of Wisconsin Constitution" by entering his home without his consent, searching his home and seizing him without a "constitutional justification" or a warrant. Dkt. No. 1 at 4, 9. He says the prosecution detained him "illegally by use of stalking horse which he supposed to have been charged with a crime within 48 hours of arrest which it took 6

5

says that the officers terrorized him, separated him from his daughter, wrongfully detained and imprisoned him, all of which caused him to lose his home, his property, his children and his freedom. Id.

The plaintiff asserts that the officers arrested him without first reciting the Miranda warnings. Id. at 8. He says he was then held without bail and without being provided a "court proceeding with out any formal charges for six months." Id. He says that while he was detained, he asked "the Courts for any evidence or discovery which he was also denied." Id. at 9. He says, "Brady violation," which he says "force[d] the Plaintiff to except [sic] a plea offer." Id. The plaintiff says that when he realized that a "vindictive, malicious prosecution [was] being set forth," he wanted to withdraw "his plea offer," but the court denied that request. Id. The docket from the plaintiff's state court criminal case shows that he pleaded guilty on February 21, 2022, to one charge of unlawful possession of a firearm. See State of Wisconsin v. Jesse M. Cunningham III, Kenosha County Case Number 2021CF000925 (available at https://wcca.wicourts.gov/case.html). The court dismissed a second count of possession of THC. Id.

The plaintiff asserts that the officers violated his rights under the Fourth Amendment and "Sec II of Wisconsin Constitution" by entering his home without his consent, searching his home and seizing him without a "constitutional justification" or a warrant. Dkt. No. 1 at 4, 9. He says the prosecution detained him "illegally by use of stalking horse which he supposed to have been charged with a crime within 48 hours of arrest which it took 6

month to be charged [*sic*].” Id. at 9. He also claims that state prosecutors violated Brady and his right to due process, and he says they committed “stalking horse violations.” Id. at 10. He also says he was given an unconstitutional, “[i]llusory plea offer.” Id.

The plaintiff says the officers’ behavior led to him losing custody of his children, his home and his “material wealth and freedom.” Id. at 10. He says the “proper punishment for racially motivated behavior is to be terminated.” Id. The plaintiff seeks to have custody of his children returned and “money so [he] can replace some of the things [he’s] lost and could have gain[ed] over these few years or more.” Id. He also seeks unspecified punitive damages and declaratory relief. Id.

C.     Analysis

The plaintiff seeks to proceed on claims related to the allegedly unlawful entry and search of his home, arrest/seizure of his person, his detention pending charges and various issues with his state criminal case proceedings, including due process violations and what he calls an illusory plea offer. The court will address each of these claims separately.

1.     *Unlawful Entry and Search*

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV; Alexander v. McKinney, 692 F.3d 553, 558 (7th Cir. 2012) (citing Albright v. Oliver, 510 U.S. 266, 275 (1994) (plurality opinion)). “With few exceptions, the Fourth Amendment prohibits the warrantless entry of a person’s home to make an arrest or to conduct a

6

search." Peals v. Terre Haute Police Dep't, 535 F.3d 621, 627 (7th Cir. 2008) (citing Kyllo v. United States, 533 U.S. 27, 31 (2001)). One exception to the warrant requirement is where the owner of the home consents. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).

The plaintiff claims that the officers entered and searched his home and person without his consent or a search warrant. He says the officers had only false information from his girlfriend (Ms. Rickey), of whom they knew, and that she had mental health issues. The plaintiff says that neither he nor his daughter consented to the officers' entry and search of the home. He says the officers nonetheless searched him and his person well beyond the range within the plaintiff's reach, from which he may have obtained a weapon or destroyed evidence. The plaintiff's state court criminal docket suggests the officers found a firearm and drugs and charged him with their illegal possession.

The court must accept those allegations as true for purposes of this decision. The court finds that, under that standard, the plaintiff sufficiently states a Fourth Amendment claim that the four officers unlawfully entered his home and unreasonably searched the plaintiff and his home without a warrant or an exception to the warrant requirement. The court will allow him to proceed on that claim.[1]

---

[1] The plaintiff suggests the entry and search were unlawful under a "stalking horse" theory. The Seventh Circuit recently explained this theory: "[Although] 'parole officers may work with police officers provided the parole officers are pursuing parole-related objectives' . . . when a parole or probationary search operates as 'a subterfuge for a criminal investigation' to evade the Fourth Amendment's warrant and probable cause requirements, such searches 'violate[ ] the Fourth Amendment.'" United States v. Price, 28 F.4th 739, 750

2. *Unlawful Arrest/Seizure*

The court also reviews the plaintiff's claim of unlawful arrest under the Fourth Amendment. See Alexander, 692 F.3d at 558. An officer has an absolute defense to a claim of unlawful arrest or detention or unreasonable seizure if there existed probable cause for the arrest or detention. See McWilliams v. City of Chicago, No. 20-1770, 2022 WL 135428, at *2 (7th Cir. Jan. 14, 2022) (citing Martin v. Marinez, 934 F.3d 594, 598 (7th Cir. 2019)); Abbott v. Sangamon County, 705 F.3d 706, 713–14 (7th Cir. 2013).

The plaintiff alleges that the officers had no warrant or reason to arrest him. He suggests the officers unconstitutionally entered his home and arrested him because he is African American and lives in Kenosha County. For screening purposes, the court must accept as true the complaint's allegations that the officers had no reason to arrest him. The court finds that those allegations sufficiently state a claim of false arrest in violation of the Fourth Amendment. The plaintiff may proceed on this claim for "some form of damages for the loss of his time and the dignitary insult inflicted by [the alleged] racial discrimination." Mordi v. Zeigler, 870 F.3d 703, 708 (7th Cir. 2017).

The court notes, however, that the state court docket indicates the plaintiff was convicted of being a prohibited person in possession of a firearm. Cunningham, Case No. 2021CF000925 (Kenosha County Circuit Court). If it turns out that the officers had probable cause to arrest and detain the

---

(7th Cir. 2022) (quoting United States v. Brown, 346 F.3d 808, 811 (8th Cir. 2003); and United States v. Stokes, 292 F.3d 964, 967 (9th Cir. 2002)). The court need not decide whether this theory applies for purposes of screening.

plaintiff—if, for example, they found the plaintiff in possession of a gun despite the fact that he had a prior felony conviction—that fact could be an absolute defense to his false arrest claim, and this court's decision to allow the claim to proceed at the screening stage does not prohibit the defendants from raising that or any other defense.

3. *Unlawful Detention*

The Fourth Amendment also governs the plaintiff's claim that he was unlawfully detained pending his criminal charges. See Williams v. Dart, 967 F.3d 625, 632 (7th Cir. 2020) (citing Manuel v. City of Joliet ("Manuel II"), ___ U.S. ___, 137 S. Ct. 911, 917 (2017)). Under the Fourth Amendment, detainees have a right to a judicial determination of probable cause to hold them within a reasonable time (often considered to be forty-eight hours) after their arrest. See generally Gerstein v. Pugh, 420 U.S. 103 (1975); Mitchell v. Doherty, 37 F.4th 1277, 1280–81 (7th Cir. 2022).

The plaintiff takes issue with his detention from his arrest on or around February 6, 2021 until a court determined that there was probable cause to detain him pending his trial. The docket from the plaintiff's state court criminal case shows that a criminal complaint was filed on July 28, 2021, and he first appeared in court two days later. On October 22, 2021, he appeared in court for a preliminary hearing. A Kenosha County Police Officer (who is not a defendant) gave testimony, and the state court determined that there was probable cause to hold the plaintiff in custody pending his trial.

The complaint does not say on whose authority the plaintiff was detained from February until July 2021, nor does it say whether the state court found probable cause to detain him continuously from July (or February) 2021 until his preliminary hearing on October 22, 2021. But the Wisconsin Circuit Court Access website shows that on November 18, 2020, the plaintiff was sentenced to three years of probation due to his guilty plea in three different cases. See State of Wisconsin v. Jesse M. Cunningham III, Kenosha County Case Numbers 2020CF000813, 2020CF000809, 2020CF000282, available at https://wcca.wicourts.gov/case.html. That means that when the plaintiff was arrested in February 2021, he was on probation. Law enforcement has the authority to detain persons on probation and place them on a "hold" pending charges for revoking the conditions of their probation. See Johnson v. Sondalle, 112 F. App'x 524, 527 (7th Cir. 2004) (citing Wis. Stat §973.10(1), Wis. Admin. Code DOC §§328.22(2)(b), (4); 331.04(1), (2)(b), (5)). Prosecutors do not need to obtain a probable cause determination to detain a probationer whom they believe has violated his probation pending the filing of criminal charges. See Smith v. City of Madison, 413 F. Supp. 3d 823, 841 (W.D. Wis. 2019) (explaining the "reduced Fourth Amendment rights" of probationers). Prosecutors eventually did file a petition to revoke the plaintiff's probation in his 2020 cases, which the state court granted. See State v. Cunningham, Case No. 2020CF000813 (entry of Oct. 25, 2021). The plaintiff cannot state a claim that he was unlawfully detained while on a probation hold after his arrest in

February 2021 but before his preliminary hearing in October 2021 on his 2021 charges.[2]

To the extent the plaintiff seeks to challenge being placed on a probation hold pending his revocation charges, he also cannot state a claim. The agents in charge of the plaintiff's probation (whom the plaintiff does not identify or name as defendants) would be absolutely immune from a suit challenging their conduct in "issu[ing] a detainer authorizing the continued detention of a probationer." Sabo v. Hicks, No. 20-cv-718, 2020 WL 6684597, at *5–*6 (E.D. Wis. Nov. 12, 2020) (citing Copus v. City of Edgerton, 151 F.3d 646, 649 (7th Cir. 1998); Walrath v. United States, 35 F.3d 277, 282 (7th Cir. 1994); and Smith v. Gomez, 550 F.3d 613, 619 (7th Cir. 2008)). The court will not allow the plaintiff to proceed on a claim challenging his detention pending his revocation hearing or the filing of charges in his 2021 state court case.

### 4. *State Court Criminal Proceedings*

The plaintiff also seeks to proceed on claims related to his state court criminal proceedings. He says prosecutors maliciously prosecuted him,

---

[2] The court notes that it is possible the officers entered and searched the plaintiff's home and arrested him because of a reasonable suspicion that he had violated the conditions of his probation. If that is what happened, then the plaintiff might not have a Fourth Amendment claim against them for the entry, search or arrest. See Smith, 413 F. Supp. 3d at 841 (citing United States v. Knights, 534 U.S. 112, 121 (2001)) ("Probationers may be searched on the basis of 'reasonable suspicion' that they violated the terms of their supervision."). The court cannot determine from the complaint whether this was the case, and the court must accept the complaint's allegations as true at the screening stage. The court will not dismiss the complaint for this reason, but the court's decision to allow the plaintiff to proceed on the claim does not prohibit the defendants from raising this or any other defense.

withheld favorable evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), violated his right to due process and forced him to accept a plea agreement that he later was unable to retract. The docket from the plaintiff's state court criminal matter shows the plaintiff entered his plea on February 21, 2022, and the state court sentenced him on January 6, 2023.

The plaintiff cannot proceed on claims challenging his state court proceedings. A prisoner may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 486 (1994). The rule from <u>Heck</u> bars the plaintiff's claims challenging his state court proceedings "no matter the relief sought (damages or equitable relief), [and] no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81–82 (2005) (emphasis in original).

The plaintiff has not asserted that he has successfully challenged his conviction or sentence; the docket from his state court case does not show that he even has appealed his conviction or sentence. On January 20, 2023, the plaintiff moved for reconsideration of his sentence, but that motion remains pending. Because the plaintiff's claims about the prosecution's conduct and his plea agreement would directly call into question the legality of his conviction or sentence, he cannot raise those claims in this action under §1983 unless and

until he successfully invalidates either. See Foley v. Landgraf, No. 12-cv-1000, 2013 WL 1352160, at *2 (E.D. Wis. Apr. 2, 2013) (citing Heck, 512 U.S. 477, and Skinner v. Switzer, 562 U.S. 521, 536–37 (2011)) ("Plaintiff may not use a federal § 1983 action to . . . overturn his conviction or sentence . . . , to remedy *Brady* violations, or to pursue a state court tort claim for malicious prosecution.").[3]

To the extent that the plaintiff wishes to challenge his conviction or sentence, he cannot do so through this federal civil rights case. The plaintiff may challenge "the fact or duration of his confinement" only in a petition for a writ of *habeas corpus*. Heck, 512 U.S. at 481; see Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

5.      *Non-Officer Defendants*

The complaint also names Kenosha County as a defendant. A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of

---

[3] Heck does not bar the plaintiff's claims of unlawful entry, search and arrest because those claims do not necessarily imply the invalidity of the plaintiff's conviction or sentence and do not affect the officers' discovery of evidence that led to the plaintiff's arrest and unlawful possession charges or his guilty plea and conviction. See Mordi, 870 F.3d at 707–08 (citing Evans v. Poskon, 603 F.3d 362 (7th Cir. 2010)); O'Boyle v. Carassco, No. 16-cv-959-pp, 2019 WL 1129493, at *9 (E.D. Wis. Mar. 12, 2019).

federal law." <u>Los Angeles County v. Humphries</u>, 562 U.S. 29, 36 (2010) (citing <u>Monell</u>, 436 U.S. at 694). To show municipal liability, the plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" <u>Estate of Perry v. Wenzel</u>, 872 F.3d 439, 461 (7th Cir. 2017) (quoting <u>Daniel v. Cook County</u>, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 138 (1988) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The complaint does not allege that the plaintiff suffered an injury because of an unconstitutional policy or custom of Kenosha County. The complaint alleges that the officers "disregarded protocol" when they allegedly illegally entered his home and arrest him. Dkt. No. 1 at 6. The complaint seeks to hold those officers liable for their conduct in searching and seizing the plaintiff, and it seeks to challenge the plaintiff's state court criminal proceedings. These allegations are not sufficient to state a basis for liability against Kenosha County. The court will dismiss the County as a defendant.

The plaintiff also seeks to sue the Kenosha County Prosecutor's Office and Police Department. The court presumes the plaintiff means the Kenosha

County District Attorney's Office. Neither the District Attorney's Office nor the Police Department are suable entities under §1983.

Section §1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The Kenosha County District Attorney's Office is not a "person." Further, defendants in a federal lawsuit must have the legal capacity to be sued, and the "law of the state where the court is located" determines that capacity for entities that are not individuals or corporations. Fed. R. Civ. P. 17(b). "The federal courts look to state law to determine if a defendant is amenable to suit." DeGenova v. Sheriff of DuPage Cty., 209 F.3d 973, 976 n.2 (7th Cir. 2000) (citing Fed. R. Civ. P. 17(b)). Wis. Stats. §978.001, *et seq.* govern district attorneys. But while §978.05 gives district attorneys the authority to prosecute criminal, forfeiture, traffic and ordinance actions and to perform investigative functions, it allows them to bring civil cases only under certain, specific state statutes. It does not give district attorneys broad authority to sue or be sued, and thus "an entity characterized as the 'office of the district attorney' or as the 'district attorney' does not have the authority to sue or be sued," Buchanan v. City of Kenosha, 57 F. Supp. 2d 675, 679 (E.D. Wis. 1999), and the court must dismiss the district attorney's office (or, as the plaintiff refers to it, the "prosecutor's office") because it is not a suable entity.

The same is true of the Kenosha Police Department. It is not a person. As the court noted above, there are some circumstances in which a plaintiff may sue a *municipality* under §1983. See Monell, 436 U.S. 658. But the Kenosha

Police Department is not a municipality—it is a *department* of a municipality (the City of Kenosha). So again, the court must turn to state law to determine whether a police department may sue or be sued separately from the city of which it is a department. This court has held that it is not. See, *e.g.*, Hobbs v. Shesky, No. 22-cv-492-pp, 2022 WL 16752064, at *8 (E.D. Wis. Nov. 7, 2022) (citing Whiting v. Marathon Cty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004)). The court must dismiss the police department because it is not a separate entity capable of being sued.

6. *State Law Claim*

The plaintiff asserts that the officers violated his rights under federal and state law, but the only state law he cites is "Sec II of Wisconsin Constitution." Dkt. No. 1 at 4. It is not clear to which "section II" of the state constitution he refers. Section 2 of Article I of the Wisconsin Constitution provides, "There shall be neither slavery, nor involuntary servitude in this state, otherwise than for the punishment of crime, whereof the party shall have been duly convicted." WI Const art. I §2. The plaintiff has not alleged slavery or involuntary servitude. The court infers that the plaintiff may have intended to bring a claim under the section of the state constitution most similar to the Fourth Amendment of the U.S. Constitution—Section 11 of Article I, which reads, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Id.,

§11. This language is identical to the text of the Fourth Amendment, but for a slight difference in punctuation. See U.S. Const. Amend. IV.

For the plaintiff to litigate this claim under the U.S. and state constitutions would be duplicative because "the parties, claims, facts, and requested relief" in both claims are identical. Norfleet v. Stroger, 297 F. App'x 538, 540 (7th Cir. 2008). There is no reason for the court to allow the plaintiff to proceed on identical claims under federal and state law. The court declines to exercise supplemental jurisdiction over a potential state law claim under Article I, Section 11 of the Wisconsin Constitution. See 28 U.S.C. §1367(a); Bailey v. City of Chicago, 779 F.3d 689, 696 (7th Cir. 2015) ("The exercise of supplemental jurisdiction is purely discretionary.").

7. *Summary*

The court will allow the plaintiff to proceed on Fourth Amendment claims against Officers Singh, Vega, Rowley and Aquino for 1) the allegedly unlawful entry and search of the plaintiff's home without probable cause or a search warrant and 2) the allegedly unlawful arrest of the plaintiff without probable cause or an arrest warrant. The plaintiff may not proceed on any other claim or against any other defendant.

The plaintiff wants the officers who arrested him "to be terminated" for their alleged conduct. Dkt. No. 1 at 10. He also asks the court to return to him custody of his children. This federal court does not have the authority to direct the Kenosha County Police Department to fire its employees or officers. Nor does it have the authority to order the State of Wisconsin to return custody of

the plaintiff's children to him. The plaintiff also seeks declaratory relief, but he does not specify what relief he wants. Declaratory relief is available under §1983 only "if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The only claims on which the court is allowing the plaintiff to proceed (the allegedly unlawful entry, search and arrest) have concluded. There is no ongoing violation of law for which the plaintiff may receive declaratory relief. This case will proceed only on the plaintiff's request for damages.

## III.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Kenosha County, the Kenosha County Prosecutor's Office and the Kenosha County Police Department.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Kenosha County Police Officers Singh, Vega, Rowley and Aquino under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff

information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$323.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Prairie du Chien Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[4] must submit all correspondence and case filings to

_____

[4] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 3rd day of August, 2023.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**